Clem REESE, Appellant,

v.

INTERSTATE SECURITIES CO.,
Appellee.

No. 15230.

Court of Civil Appeals of Texas.
Dallas.

April 5, 1957.

Rehearing Denied May 3, 1957.

Yarborough, Yarborough & Johnson and Fred A. Jones, Jr., Dallas, for appellant.

Bonney, Wade & Stubblefield, Dallas, for appellee.

CRAMER, Justice.

This is an action for a deficiency judgment based upon a note and for foreclosure of a chattel mortgage lien on a 1955 Ford Four-Door Sedan Automobile. Appellee presented a motion for summary judgment for the balance due on the note, principal, interest, attorney's fees, and costs, and for foreclosure of its chattel mortgage lien. Appellee's affidavit was made by R. W. Smith and states:

"At present and on April 25, 1955, I am and was employed by Interstate Securities Company of Texas and am and was familiar with the books and records of the said company, particularly with reference to a transaction wherein a note signed by Clem Reese and made payable to James Hampton Auto Co. was subsequently assigned to Interstate Securities Company of Texas for a valuable consideration, making Interstate Securities Company of Texas the legal holder thereof in due course, which note, a copy of same being attached hereto, is certified to be an exact copy of the original note which was dated April 25, 1955, payable in 30 monthly installments of $78.02 each, beginning June 5, 1955.

"I state further that after defendant had reduced his balance due to the sum of $1794.46, defendant failed and refused to make further payments when due, but became in default upon the said note, and that Interstate Securities Company of Texas, after such default, pursuant to the terms of the conditional sales contract under which the said Clem Reese bought the automobile, repossessed the automobile, which is described in the plaintiff's original petition in the lawsuit No. 112362–B pending in County Court, Dallas County, Texas.

"I state further that upon regaining possession of the said automobile, it was sold to the highest bidder who could and would pay cash for said automobile in a regular sale. I state further that the price which is shown in plaintiff's petition is within my own certain knowledge the best cash price that could be obtained for the automobile upon the date it was sold, and that the only means Interstate Securities Company of Texas had of realizing that much cash upon the automobile was through such sale. I state further that defendant made no bid at the sale.

"I state further that Clem Reese is at this time, after allowance of all lawful credits, indebted to Interstate Securities Company of Texas upon the said note and sales contract, in the amount of $375.83, as computed in plaintiff's petition in the above suit, and as shown by our records, upon which the petition is based.

"I state further that at no time was any employee or officer of Interstate Securities Company of Texas authorized to make any promises to Clem Reese in order to induce him to give up possession of the automobile.

"I state further upon my own knowledge based upon years of dealing in automobile financing that the figures contained in the conditional sales contract and note agreed upon between Clem Reese and James Hampton Auto Co. at the time the said Clem Reese purchased the said automobile, and the application of Clem Reese for time credit, were those customarily used upon a sale of the make and model of the automobile involved here, in time sales contracts, and that Clem Reese has not paid, nor did he agree to pay, nor did the said sales contract or his application for credit provide for payment of any interest, to my company."

A copy of the note and chattel mortgage signed by Clem Reese set out in the affidavit was attached to the motion. The note was as follows:

"$2340.60                    April 25, 1955

"For Value Received, I or we, jointly and severally, promise to pay to James Hampton Auto Company or order the sum or Twenty Three Hundred and Forty Dollars and 60/100 Dollars, payable in 30 equal installments of $78.02 on the same day of each successive month commencing 6–5, 1955, and a final installment of $——— due on ————, 195–; together with interest on installments after maturity at the highest lawful rate, and at the offices of Interstate Securities Company of Texas, at Dallas, Texas. If default is made in the payment of any installment when due, then all the remaining installments shall become due and collectible at once. All signers, endorsers and parties to this instrument hereby waive demand, protest and notice of non-payment, and agree to pay all costs and expenses incurred in the collection of this note, including an attorney's fee of ten per cent in case of default, minimum fee $25.00. Address ————— Signed: Clem Reese."

The chattel mortgage provision contained the following provision: "* * * Said personal property is to remain in the possession of said mortgagor, unless or until any one or all of the following conditions exist: If the mortgagor shall make default in the payment of any installment of said note, or commit a breach of any of the covenants or agreements hereof, or if said mortgagee, its regular representatives, successors or assigns shall deem said mortgage, or said chattel, or said debt, or said security, unsafe or insecure, then and in that event the mortgagee, its regular representatives,

successors, or assigns, shall be immediately and forthwith entitled to the possession of the personal property herein before described, and may immediately take possession of the same, with or without notice or demand, notice and demand being expressly waived."

Appellant replied thereto by affidavit, material here, that:

"(1) My name is Clem Reese. I am colored and am the defendant in the above styled case. The note involved in this suit involved usurious interest and a considerable amount for insurance, the exact amount of each being unknown to me but well known to the plaintiff who has all of the records. My 1955 Ford automobile was in excellent condition, was not in need of repairs and had a reasonable cash market value of $1900.00, at the time said automobile was taken from my possession; that the reasonable cash market value of said automobile in Dallas County, Texas, was worth more at the time same was taken than the balance due on the note.

"(2) Said automobile was taken from me illegally and unlawfully and converted by the plaintiff to its own use; and by reason of said illegal and unlawful taking, which was without court process, I was deprived of the use of said automobile and by reason thereof have been damaged in the sum of $750.00.

"(3) Plaintiff has not made all lawful credits to which I am entitled and had all of such credits been given I would not owe any sum of money whatsoever and I do not now owe any sum of money to the plaintiff. If said automobile had sold at the highest price obtainable and if I had been given all legal credits to which I was entitled, the plaintiff would owe me the sum of $1,000.00."

Under such record the trial court sustained the motion of appellee and entered judgment for the total amount due on the principal, interest, attorney's fees, costs, and foreclosure of the lien and from that judg-

ment, to which exception was duly taken, and appellant has duly perfected this appeal, here briefing three points of error in substance: Error in sustaining the motion for summary judgment because (1) the motion failed to negative conclusively the existence of a genuine issue of fact; (2) appellee "was a trustee accounting to the cestui que trust and could not do such by affidavit"; (3) the affidavits and pleadings showed Interstate Securities Company was in exclusive possession of all facts, and he, Reese, could not more specifically answer such motion.

Appellant's points are countered that the trial court did not err in granting the motion where (1) the motion was supported by factual affidavits setting out all pertinent figures and proceedings reflected by the record and the affidavit was not controverted by factual affidavit or other proof, but was attacked only by conclusions unsupported by any factual data. (2) "The record does not reflect that any trusteeship arose that would require an accounting of disposal of security, in the absence of the demand for accounting provided in the contract between the parties"; and (3) "Where it had all facts before it by affidavit that were uncontroverted except by pled conclusions particularly where both parties had the lawful remedy of producing all of the records by motion to produce instruments, subpoena duces tecum and depositions, none of which was resorted to by appellant, who, for the first time at appeal level complains that he was not given an opportunity or time to show that appellee was in exclusive possession of the records with which he hoped to prove his defense, if any."

All points are briefed together and are replied to in the same manner.

The pleadings are not sworn to. The affidavits submitted on the motion for summary judgment are each by interested witnesses. However, the affidavit of appellee's witness was clear and full and, if considered alone, entitled appellee to the judgment rendered. The affidavit of appellant is

based not on admissible evidentiary facts but on conclusions to the effect (1) that the note involved usurious interest and a considerable amount of insurance; (2) that the automobile had a "reasonable cash market value of $1900.00 at the time said automobile was taken from my possession"; and was worth more than the balance on the note; (3) that the automobile was taken illegally, etc.; (4) there was lack of proper credits which would show appellee owed him $1,000.00. Appellant made no showing of any effort to learn the true facts either by discovery, depositions, or requests for admissions; set out no facts as to definite or approximate amounts actually paid by him on the debt sued on, no factual data as to the reasonable cash market value of the automobile. Under such record we cannot hold that the trial court erred in rendering the judgment here appealed from. See Comment, 2 Baylor Law Review 320, "Summary Judgment in Texas," at page 326, as follows:

"As to the evidence, subject to the requirement that an affidavit must show that all testimony therein is based on personal knowledge and that the witness is competent, the evidence is presented before a notary public exactly as it would be introduced before the reporter on an actual trial in which there is no cross-examination. The procedure has sometimes been called a hearing on the record. Exclusionary rules of admissibility apply to the motion for summary judgment with the same force and to the same extent as in the regular lawsuit, excepting, of course, the basic rule that all testimony must be subject to cross-examination. All testimony is under the pains and penalties of perjury as it must be reduced to affidavit form. A party must show the competency of an exhibit by connecting it with the factual elements to which it is relevant. Written documents must be attached to the motion and exhibited in full. The rules as to conclusions and opinions are applicable, as is the best evidence rule. The parol evidence rule, really a rule of law, is followed, and it goes without saying that the fundamental requirement of relevancy operates here as in any legal proceeding.

"Most important of all, the testimony in the affidavit will not be admitted if it is hearsay, for the rules are explicit in requiring not only that the affiant relate that which is based on personal knowledge but also that his testimony affirmatively shows that it reflects personal experience. The exceptions to the hearsay rule will undoubtedly be honored in the motion for summary judgment as elsewhere."

The judgment of the trial court is affirmed.